# EXHIBIT R

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

-oOo-

MARIA GUADALUPE DIAZ; A.D., a minor by and through his Guardian Ad Litem, MARIA GUADALUPE DIAZ; A.D., a minor by and through his Guardian Ad Litem, MARIA GUADALUPE DIAZ; LEONARDO DIAZ; and RAMONA DE DIAZ,

Plaintiffs,

vs.

CITY OF TORRANCE; ARTURO CASTILLO; CODY WISSLER; JESUS GARCIA; JASON BERMUDEZ; and DOES 6-10, inclusive,

Defendants.

Case No. 2:25-CV-03389-JLS (AYPx)

REMOTE DEPOSITION VIA VIDEO TELECONFERENCE OF

EDWIN PARTOVI, M.D.

Wednesday, August 12, 2026 at 10:05 a.m.

REPORTED BY:
Cheryl L. Laboa, CSR No. 10039
JOB NO. 3031473
PAGES 1 - 102

STENO
Concierge@Steno.com
(888) 707-8366

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

-oOo-

MARIA GUADALUPE DIAZ; A.D., a minor by and through his Guardian Ad Litem, MARIA GUADALUPE DIAZ; A.D., a minor by and through his Guardian Ad Litem, MARIA GUADALUPE DIAZ; LEONARDO DIAZ; and RAMONA DE DIAZ,

Plaintiffs,

vs.

CITY OF TORRANCE; ARTURO CASTILLO; CODY WISSLER; JESUS GARCIA; JASON BERMUDEZ; and DOES 6-10, inclusive,

Defendants.

Case No. 2:25-CV-03389-JLS (AYPx)

Deposition of EDWIN PARTOVI, M.D., taken remotely via video teleconference on behalf of Defendants, with the witness located at Los Angeles, California, beginning at 10:05 a.m. and ending at 12:59 p.m. on Wednesday, August 12, 2026, before CHERYL L. LABOA, Certified Shorthand Reporter No. 10039.

APPEARANCES:

For the Plaintiff:

LAW OFFICES OF DALE K. GALIPO
ERIC VALENZUELA, ESQ.
evalenzuela@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
818-347-3333

(Present via video teleconference)

For Defendants CITY OF TORRANCE; ARTURO CASTILLO; CODY WISSLER; JESUS GARCIA; JASON BERMUDEZ:

JONES MAYER
THURGOOD M. WYNN, ESQ.
tmw@jones-mayer.com
3777 North Harbor Boulevard
Fullerton, CA 92835
714-446-1400

(Present via video teleconference)

INDEX OF EXAMINATION

WITNESS EDWIN PARTOVI, M.D.


| EXAMINATION | PAGE |
| --- | --- |
| By Mr. Wynn | 6 |
| By Mr. Valenzuela | 47 |
| Further By Mr. Wynn | 84 |
| Further By Mr. Valenzuela | 95 |


INFORMATION REQUESTED

Page Line

None

DOCUMENTS REQUESTED

Page Line

None

WITNESS INSTRUCTED NOT TO ANSWER

Page Line

None

INDEX TO EXHIBITS

EDWIN PARTOVI, M.D.

MARIA GUADALUPE DIAZ; A.D., a minor by and through his Guardian Ad Litem, MARIA GUADALUPE DIAZ; A.D., a minor by and through his Guardian Ad Litem, MARIA GUADALUPE DIAZ; LEONARDO DIAZ; and RAMONA DE DIAZ vs. CITY OF TORRANCE; ARTURO CASTILLO; CODY WISSLER; JESUS GARCIA; JASON BERMUDEZ; and DOES 6-10, inclusive

Wednesday, August 12, 2026

Cheryl L. Laboa, CSR No. 10039

| MARKED | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Autopsy Report | 14 |

Los Angeles, California
Wednesday, August 12, 2026; 10:05 a.m.

COURT REPORTER: Good morning. We are now going on the record. The time is 10:05 a.m. My name is Cheryl Laboa and I will be your court reporter this morning. My CSR Number is 10039 and I will now swear in the witness.

-oOo-

EDWIN PARTOVI, M.D.,
Having first been remotely sworn,
was examined and testified as
follows:

-oOo-

EXAMINATION

BY MR. WYNN:

Q. Good morning, Dr. Partovi.

A. Good morning.

Q. And am I pronouncing your last name correctly?

10:06 A. Yes.

Q. Will you please state and spell your name for the record?

A. Edwin Partovi, E-D-W-I-N, P-A-R-T-O-V-I.

Q. And have you been deposed in the past?

10:06 A. Yes.

11:59
11:59
12:00
12:00
12:00

downward component that you're describing at least consistent when the bullet is going through the body an individual going to the ground as opposed to standing straight up when they sustained that projectile that went through the body. Not just focusing on when the bullet is going through the body. I'm not going anything before it entered the body.

MR. WYNN: Just for the record, same objections and also asked and answered.

THE WITNESS: What I know is that that is the direction that the bullet took through the body. It has a downward direction, which can have multiple different possible explanations, one of which is compatible with, consistent with, but not specific for is him falling or on the ground, et cetera, as he sustained this gunshot wound.

BY MR. VALENZUELA:

Q. So you're saying that's at least consistent with that, if I understand you correctly?

A. Yes.

MR. WYNN: Objection. Foundation, speculation, misstates testimony.

BY MR. VALENZUELA:

Q. And would that be inconsistent with the individual standing erect when they sustained that

speculation.
THE WITNESS: Yes. Well, I mean, it depends on the type and extent of injury. Like in this case there was likely necessarily a, you know, an interval of time for blood to accumulate around the lung and have like a physiological effect in that capacity.
BY MR. VALENZUELA:
Q. So would the bullet striking these portions of the lung affect an individual's ability to breathe?
A. Yes.
MR. WYNN: Objection. Foundation, speculation.
BY MR. VALENZUELA:
Q. I think you said yes; is that correct?
A. Yes.
Q. Okay. You also have a directionality here of downward, slightly left to right, and without discernible front to back deviation. Do you see that?
A. Correct.
Q. Same thing as with gunshot A, would this downward directionality be consistent, at least, with an individual falling to the ground when the bullet traveled through the body?
MR. WYNN: Objection. Foundation, speculation, misstates testimony.

BY MR. VALENZUELA:
Q. You may respond.
A. Yeah, just for convenience, I'd like to refer to my original answer, which had a lot of explanation behind it. But I will give that same answer for this gunshot wound.
Q. And that answer was it was at least consistent but there could be other explanations, correct?
MR. WYNN: Objection. Foundation, speculation, misstates testimony.
THE WITNESS: That was the gist of it but for nuances I'll refer any readers to my original answer.
BY MR. VALENZUELA:
Q. With records to gunshot wound C, that one entered the left upper chest?
A. Yes.
Q. And that one exited out of the left lateral chest, correct?
A. Yes.
Q. Is the lateral left chest like the side of the chest?
A. Correct.
Q. And this had a directionality of right to left, front to back and slightly downward, correct?
A. Correct.

A. Correct.
Q. Okay. Gunshot wound E, you have the entrance of gunshot wound E to the right upper back, correct?
A. That's correct.
12:06 Q. Would the right upper back have to be exposed to the barrel in order to get the entrance to that portion of the back?
MR. WYNN: Objection. Foundation, speculation, misstates testimony, witness lacks
12:06 personal knowledge.
BY MR. VALENZUELA:
Q. You may respond.
A. I am not a ballistics expert, again, for what happens to a bullet outside of the body, but just from
12:07 my practical knowledge, it would seem to me that there needs to be a straight line of sight between the barrel of the gun and whatever target the trajectory, that line of trajectory.
There are other exceptions to this, which is
12:07 outside of my level of expertise, like, for example, long distances like gravity and curve trajectory and stuff like that. But yeah, I think the simple answer would be there's generally a line of sight or just a straight line between the barrel of the gun and the
12:07 target that's struck.

Q. And here it struck, this bullet at least in the right upper back, correct?
MR. WYNN: Objection. Foundation, speculation, misstates testimony.
12:08 THE WITNESS: Yes, entrance wound of the right upper back.
BY MR. VALENZUELA:
Q. And this projectile was recovered from the thoracic level 1, the T1 vertebra, correct?
12:08 A. The projectile was recovered from the soft tissue overlying the right para midline posterior thoracic level 1 vertebra, so the soft tissue overlying the vertebral bone.
Q. So this would be the soft tissue surrounding
12:09 the bone of the spine?
A. Yeah, with muscles, fatty tissue, fibrous tissue.
Q. And here you have a directionality of back, front, slightly right to left and without discernible
12:09 upward or downward deviation, correct?
A. Correct.
Q. Okay. The next gunshot wound you have is to the right upper back, F, correct?
A. Correct.
12:09 Q. And similar question to the other one, would

the right upper back have to have been exposed to the barrel of the gun to account for the gunshot wound entering the right upper back?

MR. WYNN: Objection. Foundation, speculation, misstates testimony, lacks personal knowledge.

THE WITNESS: I'll give you the same lengthy answer I gave you earlier.

BY MR. VALENZUELA:

Q. That would be the same answer for gunshot wound E, correct, the one just before this?

A. Yes.

Q. Okay. Gotcha. When you describe -- I'm still on gunshot wound F.

When you describe the posterior right 5th intercostal space, what are you referring to?

A. Intercostal space means the space -- it's not really spaces. We call them spaces because they're not bone but it's where the muscular and, you know, fibrous tissue and nerves and blood vessels are between each rib and they're numbered based on the ribs.

Q. Okay. When you say 5th, you're referring to the rib?

A. Intercostal spaces are the muscular spaces between the ribs.

Q. And did this bullet also strike the upper and middle lobes of the right lung?
A. Yes.
Q. And did it also strike the pillar region of the left lung?
A. Correct.
Q. And the bullet striking those areas of both the right and left lung, would that have affected an individual's ability to breathe?
MR. WYNN: Objection. Foundation --
THE WITNESS: Yes.
MR. WYNN: -- speculation, misstates testimony.
BY MR. VALENZUELA:
Q. Did you say yes?
A. Yes, with the same explanation I gave you earlier with another gunshot wound striking the lung.
Q. Okay. This one you have an exit gunshot wound of the left nipple areola area, correct?
A. Yes. That's correct.
Q. And here directionality you have back to front, right to left and downward, correct?
A. Correct.
Q. And similar to what I asked you earlier, would this downward trajectory be consistent with the

individual falling to the ground when the bullet traveled that way through the body?

MR. WYNN: Objection. Foundation, speculation, misstates testimony.

12:19 THE WITNESS: Yes, with the same detailed explanation I gave you earlier. In this case I should mention to you as far as the orthogonal like axis are concerned, the downward part of it is a relatively minor component, compared to like back to front, for 12:19 example.

BY MR. VALENZUELA:

Q. In other ones of your gunshot wounds, you say slightly downward, but you would agree here you don't put slightly downward for this portion, correct?

12:19 Let me give you an example. You have slightly downward for gunshot wound D, correct?

A. Yes.

Q. But here you don't have slightly downward for gunshot wound F, correct?

12:19 A. Yeah, and I can explain. The qualifier "slightly" is a relatively, what do you call it, non -- it's not exactly a strict way to do it. It's just sort of a qualifier without any like threshold as to like how it's supposed to be used. I just sometimes use it 12:19 as a way of highlighting.

12:58
12:59

Q. Can you please mention them again?
A. Anatomic pathology, clinical pathology and forensic pathology.
MR. VALENZUELA: Okay. I have nothing further.
COURT REPORTER: Any more questions from any counsel?
MR. VALENZUELA: I don't.
MR. WYNN: I have no further questions.
COURT REPORTER: Okay. Then Mr. Valenzuela, did you want to order a copy of this transcript?
MR. VALENZUELA: Not right now but I may in the future and I have your contact info. Or do you want to put your e-mail in the chat in case I need to order it in the future?
COURT REPORTER: Yes, I can do that.

-oOo-

(Whereupon the video teleconference deposition was concluded at the hour of 12:59 p.m.)

-oOo-

DECLARATION UNDER PENALTY OF PERJURY

I, EDWIN PARTOVI, M.D., do hereby certify under penalty of perjury that I have read the foregoing transcript of my deposition taken on August 12, 2026; that I have made such corrections as appear noted on the Deposition Errata Page attached hereto and signed by me; that my testimony as contained herein, as corrected, is true and correct.

Dated this _________ day of _______________, 2026, at _____________________________, California.

_____________________________
EDWIN PARTOVI, M.D.