# "EXHIBIT E"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-03265-MWC-SSC Date: January 15, 2026

Title: Alexandra Rasey-Smith *et al.* v. City of Los Angeles *et al.*

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (In Chambers) The Court DENIES IN PART and GRANTS IN PART Defendants' motion for partial summary judgment (Dkt. [51]).**

Before the Court is a motion for partial summary judgment ("Motion") filed by Defendants City of Los Angeles (the "City") and Officer Caleb Garcia Alamilla ("Officer Garcia") (collectively, "Defendants"). Dkt. # 51-1 ("*Mot.*"). In support of their Motion, Defendants filed a Separate Statement of Undisputed Facts, Dkt. # 51-4 ("*SSUF*") and the Declarations of Officers Garcia, Dkt. # 51-2 ("*Garcia Decl.*"), and Colin Chomuk, Dkt. # 51-3, and they lodged three supporting video exhibits with the Court, *see* Dkt. # 52.

Plaintiffs Alexandra Rasey-Smith, Gordon Gene Maccani, and Janet Maccani (collectively, "Plaintiffs") opposed. Dkt. # 58 ("*Opp.*"). In support of their Opposition, Plaintiffs filed Objections and Responses to Defendants' Statements of Uncontroverted Facts and Additional Uncontroverted Facts, Dkt. # 58-23 ("*SSUF Opp.*") and 21 exhibits attached to the Declaration of Eric Valenzuela, Dkts. # 58-1 ("*Valenzuela Decl.*"), 2–22. [1]

Defendants replied, Dkt. # 61 ("*Reply*"), and filed a Response to Plaintiffs' Statement of Genuine Disputes of Material Fact, Dkt. # 61-1 ("*SSUF Reply*").

The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the papers, the Court **DENIES IN PART** and **GRANTS IN PART** Defendants' motion for summary judgment.

[1] Plaintiffs subsequently re-filed eight of these exhibits after the Court denied Plaintiffs' motion for leave to file those exhibits under seal. *See* Dkts. # 60, 62, 64.

I. Background

This case arises out of the fatal shooting of decedent, Jason Maccani ("Decedent"), by Los Angeles Police Department ("LAPD") Officer Garcia, on February 3, 2024. Dkt. # 39 ("*FAC*"), ¶ 2. Plaintiffs are Decedent's wife ("Rasey-Smith") and his parents. *Id.* ¶¶ 4–6. They are suing for damages arising from Decedent's death after Officer Garcia shot Decedent while he was holding "a white plastic fork in one of his hands . . . easily distinguishable from a knife or a gun." *Id.* ¶¶ 18–19. Plaintiffs bring claims for violation of 42 U.S.C. § 1983 (excessive force, denial of medical care, substantive due process violations) against Officer Garcia, and state law tort and statutory claims (battery / wrongful death, negligence / wrongful death, and violation of the Bane Act (Cal. Civil Code § 52.1)) against both Officer Garcia and the City.

Defendants move for summary judgment on all claims except negligence, and move for summary judgment on all state law claims on the issue of standing. Dkt. # 51 (Not. Mot.). Both sides filed statements of fact and supporting evidence. The evidence includes several videos, including a hallway surveillance video, body-worn camera footage from five of the seven responding officers, and a video syncing body-worn camera footage with the surveillance video; declarations and/or interview and deposition transcripts from the responding officers; a photo of the plastic fork Decedent was holding at the time of the shooting; a Computer-Aided Dispatch ("CAD") printout; Decedent's toxicology report; and Plaintiffs' expert report.

A. Factual Background

The Court has reviewed the parties' fact statements, the responses thereto, and the underlying evidence and objections.[2] Except as noted below, the following material facts

[2] Both parties raise evidentiary objections to the other side's evidence, on grounds such as relevance, improper opinion or expert testimony, speculation and vagueness. At this stage, the Court is concerned with the admissibility of the relevant facts at trial and not the form of these facts as presented on a motion for summary judgment. *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021); *see also Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, 889 F. Supp. 2d 1198, 1215 (E.D. Cal. 2012) ("Objections to evidence on the ground that the evidence is irrelevant, speculative, argumentative, vague and ambiguous, or constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself."). To the extent the Court relies upon evidence to

are sufficiently supported by admissible evidence and "admitted to exist without controversy" for purposes of the Motion before the Court. L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R. Civ. P. 56(e)(2) (where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

*i. February 3, 2024 Shooting*

On February 3, 2024, at approximately 2:20 p.m., the LAPD received a call for service regarding an assault with a deadly weapon in progress at a studio in an industrial complex in the Skid Row area of downtown Los Angeles. *SSUF Reply* ¶ 1. The caller stated that the suspect, Decedent, was an adult white male under the influence, armed with a large stick and attacking an employee. *Id.* ¶ 2; *see Valenzuela Decl.*, Ex. A at 2:14 p.m. (CAD printout stating the suspect was "under the influence"). Dispatch instructed the officers to respond Code 3, an emergency response requiring immediate action. *SSUF Reply* ¶ 3.

LAPD Officers Garcia and Colin Chomuk responded Code 3. *Id.* ¶ 4. While en route to the location, dispatch informed Officers Garcia and Chomuk that the suspect was on the fourth floor, guarding the door to the studio and preventing one of the two persons reporting ("PRs") from exiting. *Id.* ¶ 5. Reading aloud from the patrol vehicle's CAD system, Officer Chomuk read the description of the suspect as male, white, six-feet-two-inches tall, and armed with a stick threatening employees. *Id.* ¶ 6. Since the location was in Los Angeles's Skid Row area, the officers considered the possibility that the suspect was experiencing a mental health crisis. *Id.* ¶ 70.

Officers Garcia and Chomuk arrived at the location along with Sergeant Jeffrey Punzalan, Officer Sandra Jauregui Villegas, Officer Gabriel Quintero, Officer Michael Orozco, and Officer Desiree Rodriguez (collectively, the "Officers"). *Id.* ¶ 7; *see Garcia Decl.* ¶¶ 8, 12. The Officers met with both PRs inside the building. *SSUF Reply* ¶ 9. The PRs told the Officers that a stranger, later identified as Decedent, had opened the unlocked door to their work studio, entered, and began ordering them to leave in an aggressive and erratic manner. *Id.* The PRs said that Decedent stated the world was

---

which either party objects, the objections are **OVERRULED**. To the extent the Court does not, the objections are **DENIED** as moot.

"changing" and the PRs "needed to get out of here," and that he was "very antsy," but he did not hit anyone. *SSUF Opp.* ¶ 9; *Valenzuela Decl.*, Ex. B (Jauregui body-worn camera footage) at 08:20-10:20. The PRs stated they wanted the intruder removed and agreed to sign a private persons' arrest form authorizing the officers to arrest the intruder for trespass. *SSUF Reply* ¶ 11; *Valenzuela Decl.*, Ex. B at 9:42-10:00. When an officer asked if there were weapons inside the studio Decedent could access, the PRs said there were scissors and shears but no firearms. *SSUF Reply* ¶ 13.

Per their discussion with the PRs, the Officers determined that an assault or a felony had not been committed. *Id.* ¶ 71. Accordingly, the Officers planned to arrest Decedent for misdemeanor trespass if he refused to leave the property. *Id.* The Officers planned to do so with the minimal amount of force possible. *Id.* ¶ 72. Sergeant Punzalan prepared a tactical plan, designating Officer Orozco as the contact officer, Officers Chomuk and Rodriguez as officers with authority to use less lethal force, and Officers Quintero and Garcia as the arrest team. *Id.* ¶¶ 14, 65-66. The arrest team would normally be at the back of the configuration, and the lethal and less lethal options would be to the front of the configuration. *Id.* ¶ 69. Because Garcia was a new officer still in his six-month field training and probationary period, he would not have been assigned to be lethal cover. *Id.* ¶¶ 67, 114. Officer Garcia understood, based on his training, that if lethal force was necessary, another officer would have that responsibility. *Id.* [3]

The Officers ascended the stairs to the fourth floor and positioned themselves approximately 35 feet away from the unit Decedent had entered, the door of which was ajar. *Id.* ¶ 15. The hallway was well lit. *Id.* ¶ 103. Officer Rodriguez issued a callout, announcing the presence of the LAPD and issuing verbal commands for Decedent to exit with his hands raised. *Id.* ¶ 16. Decedent was told to turn around, facing away from the officers, and walk backwards to the sound of the officer's voice. *Id.* ¶ 16.

Within a few seconds of the callout, Decedent appeared in the doorway of the studio with his hands raised. *Id.* ¶ 18. He appeared disheveled. *Id.* ¶ 19. Officer Garcia believed Decedent appeared under the influence of a narcotic. *Garcia Decl.* ¶ 16. Decedent initially complied with the officers' commands: he held his hands up, turned around, and began walking backwards towards the officers out of the studio with his hands raised. *SSUF Reply* ¶¶ 20, 73. But after taking a few steps, Decedent dropped his

[3] The parties dispute the extent to which Officer Garcia believed he could properly deviate from the tactical plan. *See id.* ¶¶ 66, 68.

arms, turned around, and began walking quickly towards the officers. *Id.* ¶ 21.[4] Officer Garcia perceived Decedent's facial expression as "tense and hostile." *Garcia Decl.* ¶ 17.

The Officers told Decedent to stop advancing, yelling, "Hold on right—Hey! Hold on right there!" *SSUF Reply* ¶ 23; *Valenzuela Decl.*, Ex. B at 12:45-55. As Decedent approached, Officer Chomuk deployed a 40mm less-lethal foam projectile round from approximately ten feet away, striking Decedent in the right stomach to lower rib area. *SSUF Reply* ¶¶ 24, 85. Officer Rodriguez simultaneously fired one beanbag round from her Remington 870 shotgun from approximately eight feet away, striking Decedent in the abdomen. *Id.* ¶¶ 25–26. Foam projectiles and beanbags are less-lethal force options designed to strike the suspect's body and cause pain without penetrating the body, in order to subdue the individual and enable officers to safely gain control. *Id.* ¶ 27.

After the foam projectile and beanbag rounds struck Decedent, he stayed upright and angled his body towards the Officers. *Id.* ¶¶ 29-30. Decedent began yelling and walking towards the officers. *SSUF Reply* ¶ 33, 84. Decedent held an object in his fist as he approached. *Id.*; *see Valenzuela Decl.*, Ex. E.[5] The handle of the object protruded a few inches from the bottom of Decedent's hand. *SSUF Reply* ¶ 77. Officer Garcia attests, after several seconds of observation, he believed the object held in Decedent's right fist was a knife. *Garcia Decl.* ¶ 22; *Valenzuela Decl.* Ex. K (Garcia Dep. Tr.) at 78:7-11. Officer Garcia attests that Decedent's eyes were wide and fixed on the Officers "with an intense, unbroken stare," and that he believed Decedent was preparing to use the knife to hurt the Officers. *SSUF Reply* ¶¶ 39-40, *Garcia Decl.* ¶ 25.

As Decedent closed the distance, Officer Rodriguez deployed a second less-lethal beanbag round from less than one foot away. *Id.* ¶¶ 34, 85. The beanbag struck Decedent on his right forearm. *Id.* ¶ 35. Decedent walked to Officer Rodriguez and used

---

[4] The parties dispute whether body-worn camera and surveillance video footage shows Mr. Maccani "abruptly spun around" and "aggressively charged towards the officers," or whether he "slowly walked towards the officers." *Id.* ¶¶ 21, 76.

[5] The parties dispute whether the videos demonstrate that Decedent "took a fighting stance" and "clench[ed] his fists," or whether he raised his arms to "shield" the less-lethal projectiles from continuing to strike his torso and abdomen. *See SSUF Reply* ¶ 29; *see also id.* ¶ 32 (describing Maccani's movements leading up to the shooting as "aggressive and combative"). The parties also dispute whether the object appeared pointed. *Id.* ¶ 30.

his forearms to push the beanbag shotgun in a downward motion. *Id.* ¶ 41.[6] Officer Rodriguez immediately pulled the beanbag shotgun away, causing Decedent to collide with his back against the north hallway wall. *SSUF Reply* ¶ 43.

Officer Garcia unholstered his firearm, although he also had on his person a taser, OC spray, and a baton. *Id.* ¶¶ 44, 107. Sergeant Punzalan grabbed Decedent's right arm above the elbow. *Id.* ¶ 45. Officer Rodriguez also used her left hand to help gain control of Decedent. *Id.* ¶ 94. Thus, with both Sergeant Punzalan and Officer Rodriguez going hands-on with Decedent (grabbing his torso and pushing him towards a wall), Officer Garcia raised his pistol and fired a single gunshot from approximately three to six feet away. *Id.* ¶ 46, 93-94, 96.[7] The bullet grazed Sergeant Punzalan's hand and struck Decedent in the arm and chest. *Id.* ¶¶ 47, 96. Garcia could not see Decedent's hands, nor the object in his hands, at the time of the shooting. *Id.* ¶ 99.

Decedent screamed. *Id.* ¶ 48. Officer Chomuk yelled out "cross fire" to the other officers immediately after the gunshot. *Id.* ¶ 109. Sergeant Punzalan pinned Decedent up against the wall. *Id.* ¶ 48, 93. Sergeant Punzalan and Officer Garcia took Decedent to the ground and handcuffed him. *Id.* ¶ 49. As they were handcuffing Decedent, Officer Garcia told the other officers that he had fired a lethal-force round that struck Decedent in the arm. *Id.* ¶ 50. The lethal shot was fired at roughly 2:28:48 p.m. *Id.* ¶ 51. The last beanbag round and the gunshot were fired within approximately one second of each other. *Id.* ¶ 97.

Officers rolled Decedent into a recovery position on his side and radioed dispatch to send an ambulance at roughly 2:29:57 p.m., just over a minute after the lethal shot was fired. *Id.* ¶¶ 52-53. Officer Garcia noticed Decedent had a chest wound after he was rolled into the recovery position and applied pressure to prevent him from bleeding out. *Id.* ¶ 54. Officer Orozco ordered that chest compressions be initiated, so Officer Garcia rolled Decedent onto his back, and performed chest compressions until another Officer took over. *Id.* ¶ 55-56. Los Angeles Fire Department personnel arrived at 2:35 p.m. and

---

[6] The parties dispute whether Decedent physically pushed Officer Rodriguez's head and back into a wall or only touched her shotgun. *Id.* ¶¶ 42, 92; *see Chomuk Decl.* Ex. A; *Garcia Decl.* Exs. A, B.

[7] Officer Garcia estimates he was six feet away from Decedent, and thus out of arm's reach, when he shot Decedent. *Id.* ¶ 101.

assumed medical care of Decedent. *Id.* ¶ 57. He was pronounced deceased at the hospital at 3:12 p.m. *Id.*

After the scene was processed, it was discovered that the object Decedent was holding in his fist was a plastic fork. *Id.* ¶ 58. Based on the responding officers' observations, most of the officers did not unholster their guns during the incident, and the officers that did draw their guns never put their finger on the trigger and never pointed their guns at Decedent. *Id.* ¶ 111.

LAPD officers are trained that if they see a suspect with a weapon in their hand, such as a knife, to give a command to drop the weapon if feasible. *Id.* ¶ 116. LAPD officers are trained in the concept of situational awareness and on identifying and distinguishing objects in suspects' hands to determine if they are weapons. *Id.* ¶ 117.

*ii. Procedural History*

On March 4, 2025, Plaintiff filed a First Amended Complaint ("FAC") asserting the following claims for relief: (1) Section 1983 - excessive force, in violation of the Fourth Amendment and Fourteenth Amendment, against Officer Garcia; (2) Section 1983 - denial of medical care, in violation of the Fourth Amendment and Fourteenth Amendment, against Officer Garcia; (3) Section 1983 - loss of familial association, in violation of the Due Process Clause of the Fourteenth Amendment, against Officer Garcia; (4) battery, against Defendants; (5) negligence, against Defendants; and (6) violation of California Civil Code § 52.1, the Bane Act, against Defendants. *See FAC.* All claims are brought by Plaintiff Rasey-Smith in her individual capacity as Decedent's wife and in a representative capacity as Decedent's successor-in-interest, except Count Three, which is brought by all three Plaintiffs.

In the instant Motion, Defendants move for summary judgment on all claims other than negligence. *Mot.* Defendants move for summary judgment in Officer Garcia's favor as to Plaintiffs' excessive force claim on the basis that his shooting of Decedent was objectively reasonable. *Id.* 7-12. Defendants move for summary judgment as to Plaintiffs' denial of medical care claim on the basis that the officers called for medical assistance within just over a minute after the shooting and rendered medical aid until it arrived. *Id.* 12-14. Defendants move for summary judgment as to Plaintiffs' substantive due process claim on the bases that, one, Plaintiff Rasey-Smith lacks standing, and, two, the conduct of Officer Garcia does not shock the conscience because he did not act with a

purpose to harm unrelated to legitimate law enforcement objectives. *Id.* 14-16. Defendants argue Officer Garcia is entitled to qualified immunity on all Section 1983 claims because he did not violate Decedent's constitutional rights, and there is no clearly established precedent that the use of lethal force, administration of medical care, and substantive due process in this situation was unconstitutional. *Id.* 17-19. Regarding Plaintiffs' state law claims, Defendants move for summary judgment as to Plaintiffs' battery/wrongful death and Bane Act claims on the same grounds: that Officer Garcia's use of force was reasonable and he did not violate any of Decedent's constitutional rights, nor did he act with the requisite intent to do so. *Id.* 19-22. Finally, Defendants challenge Rasey-Smith's standing to recover individually for any of the state law claims in her individual capacity. *Mot.* 22.

## II. Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case, and the "substantive law [ ] identif[ies] which facts are material." *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Federal Rule of Civil Procedure 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The evidence presented by the parties must be capable of being presented at trial in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v.*

*Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The Court "draws all inferences in the light most favorable to the nonmoving party." *Id.*

III. Analysis

A. Section 1983 Claims

42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" by a person acting "under color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). To assert Section 1983 claims, Plaintiffs must demonstrate that the action (1) occurred "under color of state law," and (2) resulted in the deprivation of a constitutional or federal statutory right. *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir.1988) (citations omitted). As the moving party, Defendants bear the initial burden on summary judgment of pointing out "an absence of evidence to support [Plaintiffs'] case." *Celotex*, 477 U.S. at 325. It is also Defendants' burden to prove that they are entitled to qualified immunity. *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005).

It is undisputed that Defendants acted under color of state law, so the Court considers whether there is a triable issue of fact that Officer Garcia violated Decedent's Fourth Amendment rights.

*i. Excessive Force (Claim One)*

Plaintiffs' § 1983 claim for the excessive use of force in violation of the Fourth Amendment is governed by an "objective reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989) (internal quotation marks omitted). This standard requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The calculus "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Reasonableness in this context is to be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. "[T]he reasonableness of force used is ordinarily a question of fact for the jury." *Liston v.*

*County of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997), as amended (Oct. 9, 1997); *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) ("Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

Here, on one side of the *Graham* balancing scale, the "nature and quality of the intrusion" was the most intrusive possible—Officer Garcia used deadly force by shooting Decedent. *Garner*, 471 U.S. at 9 ("The intrusiveness of a seizure by means of deadly force is unmatched."); *see also Seidner v. de Vries*, 39 F.4th 591, 596 (9th Cir. 2022) (stating that shooting a firearm is "by definition . . . 'deadly force'").

On the other side of the *Graham* scale are the countervailing governmental interests at stake. In *Graham*, the Supreme Court listed several factors to be considered in determining the government's interest in the force used: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396.

*a. Immediacy of the Threat*

The starting point is the immediacy of the threat posed by Decedent. *See Gonzalez v. City of Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014) ("The immediacy of the threat posed by the suspect is the most important [*Graham*] factor."). "In deadly force cases[ ] where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 538 (9th Cir. 2010) (internal quotation marks and alteration omitted) (quoting *Garner*, 471 U.S. at 11–12). As with all *Graham* factors, this factor must be considered from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396. For purposes of this Motion, Defendants must show based upon the evidence presented that a reasonable jury would necessarily find that Officer Garcia "perceived an immediate threat of death or serious physical injury at the time he shot [Decedent] in the" chest. *Id.* at 794.

When viewing the facts in the light most favorable to Plaintiffs, the immediacy of the threat is subject to genuine disputes of fact and thus cannot be adjudicated by the Court. In support of Defendants' arguments, the body-worn camera and surveillance footage clearly show that Decedent did not comply with commands to stop, remained on his feet after being shot with a beanbag and foam projectile, approached the Officers while holding something in his hands, and used his arms to push down Officer Rodriguez's beanbag gun. *See, e.g.*, *Valenzuela Decl.*, Ex. E. The Officers had been informed, via the dispatch and PRs, that the suspect was under the influence and had access to shears and scissors. *SSUF Reply* ¶¶ 2, 13. And Officer Garcia attests that Decedent had a tense, hostile facial expression while quickly moving towards the Officers. *Garcia Decl.* ¶ 25. Thus, Officer Garcia attests that he saw what he believed to be a "white knife" and perceived Officer Rodriguez to be in danger. *SSUF Reply* ¶¶ 38, 40, 44.

At the same time, neither the surveillance nor body-worn camera footage establish that the white plastic fork in Decedent's hand could reasonably have resembled a weapon, nor that it was reasonable to believe an officer was in danger. *See, e.g.*, *Valenzuela Decl.* Exs. B, C, E. The PRs had informed the Officers that Decedent did not have access to a firearm. *SSUF Reply* ¶ 13. The video footage shows that Decedent did not make any slashing or stabbing motions with the hand holding the fork. *See Valenzuela Decl.* Ex. E. The video footage shows that Decedent was surrounded by seven officers and was already being pinned against the wall at the time Officer Garcia shot Decedent. *See id.* And the video footage does not resolve whether Decedent was "aggressively charging" towards the officers versus walking slowly, nor whether his hands were raised in a "fighting stance," such that a reasonable officer would perceive Decedent's conduct as threatening. *See id.* ¶¶ 21, 29.

In sum, there is a genuine factual dispute as to whether, at the time Officer Garcia shot Decedent, Officer Garcia perceived himself and the Officers to be in mortal danger by an assailant who was behaving erratically within close proximity but had not made threats of harm, was holding a plastic fork, and was outnumbered seven to one. For these reasons, the first *Graham* factor weighs in favor of Plaintiffs.

*b. Severity of the Crime at Issue*

It is undisputed that the Officers were dispatched in response to a report of an assault with a deadly weapon, a large stick, in progress on Skid Row. *SSUF* ¶¶ 1-2.

However, it is also undisputed that the officers had spoken to the PRs and determined that an assault had not occurred by the time they confronted Decedent, so the crime for which the Officers were going to arrest Decedent was trespassing. *SSUF* ¶ 11, 14. Ninth Circuit precedent suggests trespassing is not a severe crime in a *Graham* analysis. *See Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007) (in assessing *Graham* factors, finding "[t]respassing and obstructing a police officer . . . are by no means such serious offenses" that an officer would have a reasonable basis to subdue plaintiff by beating him). Accordingly, this favor tips in favor of Plaintiffs.

*c. Whether Decedent was actively resisting arrest or other exigent circumstances*

This factor does not conclusively favor Officer Garcia. The video footage establishes that Decedent was not complying with verbal commands and was pushing down Officer Rodriguez's beanbag gun. *See Valenzuela Decl.*, Ex. E. At the same time, viewing the facts in the light most favorable to Plaintiffs, Decedent was surrounded by seven police officers and already being held and pinned to a wall by two officers when Officer Garcia shot Decedent. *SSUF Reply* ¶ 93-96. Accordingly, there remains a triable issue of fact as to whether Decedent was already subdued at the time of the shooting. Nor are there facts suggesting Officer Garcia had other exigencies to consider, such as nearby bystanders.

Based on these facts, a reasonable jury could find for Plaintiffs on the question of whether Officer Garcia's use of deadly force was reasonable. *Anderson*, 477 U.S. at 248. Accordingly, the Motion as to the Fourth Amendment claim for excessive force is **DENIED**.

*ii. Denial of Medical Care Claim (Claim Two)*

Defendants contend that they are entitled to summary judgment on Plaintiffs' second cause of action for denial of medical care because officers met their obligations under the law. *See Mot.* 12-14. Plaintiffs do not address Defendants' arguments. *See Opp.* While the Court may interpret Plaintiffs' failure to respond as a concession to Defendants' arguments, *see Guevara v. Marriot Hotel Servs. Inc.*, No. C 10-5347 SBA, 2013 WL 6172983, at *7 (N.D. Cal. Nov. 25, 2013), the Court nonetheless addresses the merits of the motion.

A claim for denial of medical care is analyzed under the Due Process Clause of the Fourteenth Amendment. *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003). "Due process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986). To prevail on a Fourteenth Amendment claim for inadequate medical care, a pretrial detainee must show that the defendants exhibited deliberate indifference to his serious medical needs. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992); *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). Deliberate indifference turns on the seriousness of the detainee's medical need and the nature of the defendant's response to that need. *McGuckin*, 974 F.2d at 1059. Whether an officer behaved reasonably and sufficiently promptly in rendering or summoning medical care for a detainee depends partly "on the length of the delay and the seriousness of the need for medical care." *Holcomb v. Ramar*, No. 1:13-CV-1102 AWI SKO, 2013 WL 5947621, at *4 (E.D. Cal. Nov. 4, 2013). "Just as the Fourth Amendment does not require a police officer to use the least intrusive method of arrest, [ ] neither does it require an officer to provide what hindsight reveals to be the most effective medical care for an arrested suspect." *Tatum*, 441 F.3d at 1098 (internal citations omitted). "Courts in the Ninth Circuit have often held that the reasonableness inquiry under the Fourth Amendment is ordinarily a question of fact for the jury." *Henriquez v. City of Bell*, 2015 WL 13357606, at *7 (C.D. Cal. Apr. 16, 2015).

In this case, it is undisputed that the "seriousness of the need for medical care" was severe, because Decedent had been shot with a lethal round. *See Holcomb*, 2013 WL 5947621, at *4. It is also undisputed that the responding officers called for medical assistance 70 seconds after the shooting. *See Mot.* 14; *SSUF Reply* ¶ 53. Officer Garcia applied pressure to stop bleeding and that two officers performed chest compressions while waiting for medical assistance to arrive. *SSUF Reply* ¶ 54, 56. "[T]he critical inquiry is not whether the officers did all that they could have done, but whether they did all that the Fourth Amendment requires." *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006) (holding that a police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment, even if the officer does not administer CPR in the meantime).

Nonetheless, a reasonable jury could conclude the Officers violated the Fourth Amendment by waiting to seek medical help. In Defendants' cited cases, the

uncontroverted evidence established that the officers "immediately" reported an officer-involved shooting over their radios and called for paramedics. *See, e.g.*, *Acevedo v. City of Anaheim*, No. 8:14-CV-01147-ODW(E), 2016 WL 79786, at *5 (C.D. Cal. Jan. 6, 2016). Here, it is undisputed that the Officers waited about seventy seconds to call the paramedics after filing a lethal round into Decedent's arm and chest. *SSUF Reply* ¶ 53. Video footage shows they first spent time handcuffing Decedent and attempting to keep him from falling asleep or unconscious. *See Valenzuela Decl.*, Ex. B, 13:00-14:00. Whether the delay was unreasonable given the severity of the injury is a triable issue.

Since there remains a triable issue regarding whether Officer Garcia met the minimum standard of reasonableness under the Fourth Amendment, summary judgment as to the denial of medical care claim is **DENIED**.

*iii. Substantive Due Process Violation and Interference with Familial Relationships (Claim Three)*

Plaintiffs, Decedent's wife (Rasey-Smith) and parents (Mr. and Mrs. Maccani) bring a substantive due process claim against Officer Garcia for loss of their respective familial relationships, in violation of the Due Process clause of the Fourteenth Amendment. A cause of action for loss of familial relationship is governed by the substantive due process clause of the Fourteenth Amendment, which protects against "government power arbitrarily and oppressively exercised." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (*citing Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

*a. Standing*

Defendants do not dispute that Decedent's parents have cognizable substantive due process claims. *See Mot.* 15; *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014) (recognizing that "parents have a liberty interest in the companionship of their adult children and have a cause of action under the Fourteenth Amendment when the police kill an adult child without legal justification.") (citations omitted)).

Defendants do dispute whether Rasey-Smith, as a spouse, has standing to bring the due process claim. *Mot.* 15. Defendants cite *Peck v. Montoya* as an example where the Ninth Circuit declined to decide the issue of whether a spouse may bring a due process claim. 51 F.4th 877, 893 (9th Cir. 2022) (observing that courts should be "reluctant to

expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.”).

The Court finds Ms. Rasey-Smith may proceed in her substantive due process claim, because the Constitution protects “certain kinds of highly personal relationships.” *Roberts v. United States Jaycees*, 468 U.S. 609, 619–20 (1984). “The protection is not restricted to relationships among family members.” *Quiroz v. Short*, 85 F.Supp.3d 1092, 1108 (N.D. Cal. 2015) (citing *Board of Directors of Rotary Int'l*, 481 U.S. 537, 545 (1987)). ‘‘[T]he relationships protected by the fourteenth amendment are those that attend the creation and sustenance of a family and similar highly personal relationships.” *IDK, Inc. v. Clark Cty*., 836 F.2d 1185, 1193 (9th Cir. 1988) (quoting *Roberts*, 468 U.S. at 618–19). Given that courts have found “cohabitating partnered relationships” to be protected by the Fourteenth Amendment, *see IDK, Inc*., 836 F.2d at 1192, the Court finds the spousal relationship between Rasey-Smith and Decedent is protected as well. *See id.* at 1193. The Court thus declines to grant summary judgment as to Rasey-Smith's claims on the basis of standing.

*b. Substantive Due Process Analysis*

A substantive due process action arises under the Fourteenth Amendment's Due Process Clause, which “was intended to prevent government officials from abusing [their] power, or employing it as an instrument of oppression.” *Lewis*, 523 U.S. at 840 (internal quotations omitted). “[T]he Due Process Clause is violated by executive action only when it can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense.” *Id*. at 845–47. A cognizable substantive due process claim of an abuse of power is that which “shocks the conscience” or “violates the decencies of civilized conduct.” *Id.* at 846. A plaintiff can satisfy the standard in either of two ways: (1) by showing that the officer acted with “deliberate indifference,” or (2) “the more demanding showing that he acted with a purpose to harm.” *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008); *see also Tatum*, 768 F.3d at 820–21 (distinguishing “conduct that either consciously or through complete indifference disregards the risk of an unjustified deprivation of liberty”) (citation omitted).

Plaintiffs assert that the officers' alleged conduct shocks the conscience and that the deliberate indifference standard should apply. *Opp.* 23–24. Plaintiffs argue that there is at least a triable issue as to whether “the involved officers had time to deliberate because they were at the scene for several minutes prior to the shooting.” *Opp.* 24; *see*

*Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013) ("Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience.") (citing *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir.2010)). Defendants argue that Officer Garcia had no opportunity for actual deliberation; he made a "snap judgment because of an escalating situation," so the more demanding standard of "purpose to harm unrelated to legitimate law enforcement objectives" applies, and cannot be satisfied. *Mot.* 15-16.

"A court may determine at summary judgment whether the officer had time to deliberate (such that the deliberate indifference standard applies) or instead had to make a snap judgment because he found himself in a quickly escalating situation (such that the purpose to harm standard applies), so long as the undisputed facts point to one standard or the other." *Garlick v. Cnty. of Kern*, 167 F. Supp. 3d 1117, 1165 (E.D. Cal. 2016) (quotation omitted). However, "[i]n the face of genuine disputes of material fact, the Court is not compelled to find which of the standards applies as a matter of law." *Id.* at 1168. "By its nature [], the determination of which situation [the officer] actually found himself in is a question of fact for the jury, so long as there is sufficient evidence to support both standards." *C.E.W. v. City of Hayward*, No. 13–CV–04516–LB, 2015 WL 1926289, at *13 (N.D. Cal. Apr. 27, 2015) (quotation omitted).

Here, given that Officer Garcia had been on the scene for several minutes before the shooting, and because he attests he spent 3 to 4 seconds observing the object in Decedent's hand, a reasonable jury could find that Officer Garcia had time to deliberate how he would interact with Decedent. Because the evidence does not clearly establish that Officer Garcia made a snap judgment, the purpose-to-harm standard does not apply as a matter of law, and he is not entitled to judgment on the substantive due process claim. *See Greer v. City of Hayward*, 229 F. Supp. 3d 1091, 1108 (N.D. Cal. 2017) ("Here, there is evidence to support both standards, and the determination should be left to the jury.").

B. <u>Qualified Immunity</u>

Defendants move for summary judgment on all three § 1983 claims based on qualified immunity. *Mot.* 17-22. Regarding the excessive force claim, Defendants argue that they are entitled to qualified immunity because "there is no precedent which establishes that a peace officer violates the Fourth Amendment in circumstances similar to" those in this case. *Id.* 17-18. Where the suspect is armed, or reasonably suspected of

being armed, a "furtive movement, harrowing gesture, or serious verbal threat can create an immediate threat." *See Mot*. 18. Defendants' grounds for qualified immunity as to the substantive due process are largely the same—that Officer Garcia's conduct did not give rise to a Fourteenth Amendment violation. *See id.* Similarly, regarding the denial of medical care claim, Defendants argue that the "undisputed evidence shows that medical aid was requested within approximately 70 seconds of the use of force," and that there is no clearly established law requiring an officer to "personally summon medical aid within seconds of a shooting." *Mot.* 18.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has established a two-step analysis for resolving qualified immunity claims: (1) whether the officer's conduct violated a constitutional right; and (2) whether that right was clearly established when viewed in the context of this case." *Ctr. for Bio-Ethical Reform Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 793 (9th Cir. 2008). "[W]here a defendant's entitlement to qualified immunity turns on genuinely disputed issues of fact, summary judgment is not appropriate." *Adams v. Kraft*, 828 F. Supp. 2d 1090, 1115 (N.D. Cal. 2011) (collecting cases).

As to prong one, assuming the facts in the light most favorable to Plaintiffs, Plaintiffs have raised triable issues of fact as to whether Defendants violated Decedent's Fourth and/or Fourteenth Amendment rights by using lethal force to restrain him; waiting 70 seconds to seek medical assistance; and depriving Plaintiffs of familial relationships with Decedent. *See supra* Section III.A.

As to prong two, regarding the excessive force claim, it would have been clear to a reasonable officer that shooting Decedent was unlawful where he was already physically confined, surrounded by police officers, and appeared unarmed—in other words, non-threatening. *See, e.g.*, *Toussaint v. City of El Monte*, No. 2:20-CV-06669-AB-KK, 2022 WL 2125140, at *7-8 (C.D. Cal. Jan. 27, 2022) (denying summary judgment on a claim for a excessive force and finding defendant not entitled to qualified immunity, because "it is well-established that the use of deadly force against a non-threatening suspect is unreasonable."); *Lum v. County of San Joaquin*, No. 10–1807, 2012 WL 1027667, at *6 (E.D. Cal. March 23, 2012) (same).

Since there are disputed facts material to the qualified immunity analysis, Officer Garcia is not entitled to qualified immunity. The Motion insofar as it seeks qualified immunity is **DENIED**.

C. State Law Claims

In addition to Section 1983 claims, Plaintiff Rasey-Smith brings state law claims for battery, negligence and wrongful death, and violation of California's Bane Act (California Civil Code § 52.1) against all Defendants. Defendants move for summary judgment of the battery and Bane Act claims on the merits, and on all three on the basis of lack of standing.

*i. Standing (Claims Four, Five, Six)*

Plaintiff Rasey-Smith brings the state law claims both individually and as successor in interest to Decedent. *FAC* ¶¶ 59, 64, and 73. Defendants argue Rasey-Smith cannot recover in her individual capacity because the claims are personal in nature, and Rasey-Smith was not the direct victim of the alleged conduct, i.e., the one whose rights were violated. *Mot.* 22, citing Cal. Code Civ. Proc. § 377.30 ("[A]n action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest"). Plaintiff does not address Defendants' argument. *See Opp.*

The Court finds Plaintiff Rasey-Smith lacks standing to assert the state law claims in her own right. *See Reichert v. General Ins. Co.*, 68 Cal.2d 822, 834 (1968) (battery is a personal cause of action which is not assignable); *Jones v. Cnty. of Fresno*, No. 1:23-CV-01636-KES-HBK, 2024 WL 2722630, at *4 (E.D. Cal. May 28, 2024) (holding, to the extent plaintiff alleged claim for medical negligence in her individual capacity, California's survival statute did not provide for such independent survival claim); *Pearson v. California*, No. 20-CV-05726-CRB, 2022 WL 377012, at * 9 (N.D. Cal. Feb. 8, 2022) ("A plaintiff only has a cause of action under the Bane Act in her capacity as a successor-in-interest."); and *Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal. App. 4th 141, 144 (1995) (reading Civil Code section 52.1 in conjunction with section 51.7, "which provides that all persons have the right to be free from 'violence, or intimidation by threat of violence committed against their persons' because of race, color, religion, ancestry, etc.," a cause of action under the Bane Act is "limited to plaintiffs who themselves have been the subject of violence or threats.").

Accordingly, summary judgment as to Rasey-Smith's ability to bring state law claims in an individual capacity is **GRANTED**. However, because Rasey-Smith also brings the state law claims as Decedent's successor in interest, the claims are not dismissed for lack of standing.

*ii. Battery (Claim Four)*

Defendants move for summary judgment on Plaintiffs' survival action for state law battery based on the fatal shooting. State law claims for battery are coextensive with claims for excessive force under the Fourth Amendment. *See Sanders v. City of Fresno*, 551 F.Supp.2d 1149, 1179 (E.D.Cal.2008), aff'd, 340 Fed. Appx. 377 (9th Cir. 2009) (citing *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1102 n. 6 (2004)).

Plaintiffs' fourth cause of action for battery is the counterpart of the federal claim for excessive force. *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1170 (9th Cir. 2011) (holding that "the Fourth Amendment violation alleged by [plaintiff] also suffices to establish the breach of a duty of care under California law"); *Brown v. Ransweiler*, 171 Cal.App.4th 516, 527 (2009) ("A state law battery claim is a counterpart to a federal claim of excessive use of force. In both, a plaintiff must prove that the peace officer's use of force was unreasonable.").

Defendants' Motion as to the state law battery claim is **DENIED** for the reasons stated in Section III.A.i. regarding excessive force.

*iii. Bane Act, California Civil Code 52.1 (Claim Six)*

Plaintiffs' final cause of action arises under California Civil Code section 52.1 ("the Bane Act"). Plaintiffs assert the City is vicariously liable for Officer Garcia's violation of the Bane Act pursuant to California Government Code section 815.2(a).

Section 52.1 of the Bane Act "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'" *Chaudhry*, 751 F.3d at 1105 (quoting Cal. Civ. Code § 52.1). Although the Bane Act does not require the "threat, intimidation, or coercion" to be independent from the constitutional violation, it requires specific intent to violate the victim's rights. *See Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018). "The specific intent inquiry for a Bane Act claim is focused on two questions: First, '[i]s the right at issue

clearly delineated and plainly applicable under the circumstances of the case,' and second, '[d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?'" *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018), quoting *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 803 (2017). So long as those two requirements are met, specific intent can be shown "even if the defendant did not in fact recognize the unlawfulness of his act" but instead acted in "reckless disregard" of the constitutional right. *Id*.

As discussed above, Plaintiffs present triable issues of fact on their excessive force claims and whether Decedent presented an immediate threat to officers. *See supra* Section III.A.i. The resolution of these genuine issues of material facts impact the resolution of the Bane Act claim. Additionally, the Court finds "the existence of specific intent for a Bane Act claim" in this case, like most, "is a question that is 'properly reserved for the trier of fact.'" *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 907 (9th Cir. 2024) (quoting Hughes, 31 F.4th at 1224); *see also AGG v. City of Hayward*, No. 19-CV-00697-DMR, 2020 WL 6047233, at *15 (N.D. Cal. Oct. 13, 2020) ("According to Plaintiffs, [officers] at least acted in reckless disregard of [decedent's] constitutional rights when they shot at him twelve times . . . even though he had not injured anyone and was not imminently threatening the officers' safety[.] . . . A reasonable jury could infer reckless disregard from [officer's] predetermined decisions to not use less lethal force and to shoot [decedent] when he was within a certain distance.").

Since there is a triable issue as to Plaintiff's Bane Act claim against Officer Garcia, the Motion is also denied with respect to Plaintiff's claim against the City based on vicarious liability. *See Mot.* 22; *Lopez*, 2015 WL 3913263, at *10 ("[M]unicipal actors such as defendants can be held vicariously liable under the Bane Act.").

The Court **DENIES** the Defendants' Motion as to the Bane Act.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES IN PART** and **GRANTS IN PART** Defendants' motion for summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-03265-MWC-SSC Date: January 15, 2026

Title: Alexandra Rasey-Smith *et al.* v. City of Los Angeles *et al.*

**IT IS SO ORDERED.**

:

**Initials of Preparer** TJ